# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

LYTWANIA SHARPE,

    Plaintiff,

    v.                                                    2:21-CV-31

KIMBERLY MCCARTNEY,

    Defendant.

## ORDER

Before the Court is Defendant Kimberly McCartney's amended motion to dismiss. Dkt. No. 22. After reviewing the briefs and holding a hearing, the Court **GRANTS** the motion. Accordingly, Plaintiff's amended complaint is **DISMISSED without prejudice.**

## BACKGROUND

This case arises out of a series of events that occurred at the Friendly Express store in Brunswick, Georgia, on April 20, 2019. Dkt. No. 15 ¶ 5. On that day, Plaintiff Lytwania Sharpe ("Plaintiff") alleges she was a customer at the Friendly Express store when Defendant Kimberly McCartney ("Defendant McCartney"), an officer with the Brunswick Police Department, came in and "began questioning [] Plaintiff in an aggressive manner." Dkt. No. 15 ¶¶ 5-6. Plaintiff does not explain what Defendant McCartney was

asking her, but Plaintiff says that after asking a number of questions, "[Defendant] McCartney then drew her Taser[] and deployed it several times into [] Plaintiff's body." Id. ¶ 7. Plaintiff alleges Defendant McCartney then arrested Plaintiff and "charg[ed] her with a criminal act for which there was not probable cause." Id. ¶ 16. These charges were later dropped. Id. ¶ 18.

On April 19, 2021, Plaintiff filed her complaint, alleging several federal claims and unnamed Georgia state law claims against Defendant McCartney and the City of Brunswick ("Defendant City of Brunswick"). Dkt. No. 1. Accordingly, pursuant to Rule 4(m), Plaintiff had until July 19, 2021, to serve both defendants. Fed. R. Civ. P. 4(m).[1] On July 21, 2021, two days after the initial service deadline, Plaintiff filed a returned summons executed by Defendant City of Brunswick showing that Defendant City of Brunswick was successfully served on July 16, 2021.[2] Dkt. No. 5. Plaintiff, did not, however, serve Defendant McCartney at that time, even though the original ninety-day deadline of Rule 4(m)

---

[1] Federal Rule of Civil Procedure 6 states that in computing time, if the last day of the relevant period "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6. Because Plaintiff filed her complaint on April 19, 2021, the ninety-day deadline would have expired on Sunday, July 18, 2021. Dkt. No. 1. Thus, according to Rule 6, the original service deadline was actually the following day, Monday, July 19, 2021, ninety-one days after Plaintiff filed her complaint.
[2] Defendant City of Brunswick is no longer a party to this case. See Dkt. No. 19 (Order granting Defendant City of Brunswick's renewed motion to dismiss on shotgun pleading grounds).

had expired.  Instead, on that same day, Plaintiff filed a motion for an extension of time to serve Defendant McCartney, dkt. no. 6, which the Court granted because it found good cause since Defendant McCartney moved out of the District, changed her name, and left her previous place of employment, dkt. no. 7.  The Court gave Plaintiff forty-five additional days from the date the Order was issued, July 27, 2021, to serve Defendant McCartney.  Id.  So, Plaintiff then had until September 10, 2021, to serve Defendant McCartney.

But Plaintiff did not serve Defendant McCartney by September 10, 2021.  Instead, on that same day, Plaintiff filed a second motion to extend time for service, still alleging that Defendant McCartney left her previous employer but adding that "Plaintiff hired a private investigator who has furnished an address to Plaintiff's counsel *today*."  Dkt. No. 12 ¶ 2 (emphasis added). The Court determined that even in the absence of good cause, an additional forty-five-day extension was warranted because Plaintiff required the help of a private investigator to locate Defendant McCartney, and because Plaintiff was then, according to her own motion, in possession of Defendant McCartney's address. Dkt. No. 14 at 2; Dkt. No. 12 ¶ 2.  So, after the Court's second extension of time to serve, Plaintiff had until November 5, 2021, to serve Defendant McCartney.

However, Plaintiff still failed to serve Defendant McCartney by the third deadline.  Despite the original ninety-day period imposed by Rule 4(m), and the Court's two forty-five-day extensions, Plaintiff still failed to serve process on Defendant McCartney within the requisite time.  Additionally, despite having done so on two prior occasions, Plaintiff did not even seek a fourth deadline by requesting a third extension of time to serve process on Defendant McCartney.  Dkt. Nos. 6, 12.  Plaintiff simply let the third deadline expire.  Defendant McCartney was eventually served personally with the original complaint on March 4, 2022, approximately 318 days after Plaintiff filed her original complaint, and approximately 120 days beyond the last extended deadline to serve.  Dkt. No. 22 at 2-3.  Plaintiff has yet to serve, or even attempt to serve, Defendant McCartney with the amended complaint.  Dkt. No. 22 at 3 n.3; Dkt. No. 15.

On March 21, 2022, Defendant McCartney filed a motion to dismiss by special appearance under Federal Rule of Civil Procedure 12(b)(5), arguing Plaintiff never properly served her pursuant to Federal Rule of Civil Procedure 4(m).  See Dkt. No. 18 at 4-8.  Defendant McCartney then amended her motion to dismiss to add the argument that Plaintiff's amended complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) because it is a

shotgun pleading under Federal Rule of Civil Procedure 8(a).[3]  See
Dkt. No. 22 at 9-11.  Both parties have fully briefed the issues,
see dkt. nos. 22, 26, 27, 28, and the matter is ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 4(m) states:

> **Time Limit for Service**. If a defendant is not served
> within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—
> must dismiss the action without prejudice against that
> defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause
> for the failure, the court must extend the time for
> service for an appropriate period.

Fed. R. Civ. P. 4(m).

"Because service of process is a jurisdictional requirement,
the Court lacks personal jurisdiction over a defendant who has not
been properly served."  King v. Marcy, No. 2:17-CV-112, 2019 WL
691782, at *3 (S.D. Ga. Feb. 19, 2019) (citing Pardazi v. Cullman
Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990)).  So, where
service is not perfected within the parameters of Rule 4(m), a
defendant can move to dismiss a complaint for insufficient process
under Federal Rule of Civil Procedure 12(b)(5).  Fed. R. Civ. P.
12(b)(5).  "Where a plaintiff attempts to serve a defendant and
the validity of such service is contested, 'the standards of proof
governing motions to dismiss for lack of personal jurisdiction are

---

[3] Because Defendant McCartney's amended motion to dismiss, dkt.
no. 22, supersedes her original motion to dismiss, dkt. no. 18,
the original motion to dismiss, id., is **DENIED as moot.**

applicable.'"   King, 2019 WL 691782, at 3 (quoting Kammona v. Onteco Corp., 587 F. App'x 575, 578 (11th Cir. 2014) (per curiam) (citations omitted)).  "'As with a challenge to jurisdiction . . . the party on whose behalf service is made has the burden of establishing its validity.'"  Id. (quoting Familia De Boom v. Arosa Mercantil, S.A., 629 F.2d 1134, 1138 (5th Cir. 1980) (citations omitted)).[4]  Accordingly, "a judge may make factual findings necessary to resolve motions to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process." Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 at 340, 345 (explaining that "the defense of improper service of process involves a matter in abatement and does not go to the merits of the action" and that any "factual question raised by the affidavits or other evidence presented on a Rule 12(b)(4) or a Rule 12(b)(5) motion should be determined by the district court")).

    "A plaintiff may request an extension of time for service of process upon the showing of good cause, but even in the absence of such a showing, the Court 'must still consider whether any other circumstances warrant an extension of time.'"  King, 2019 WL 691782

---

[4] Decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981 constitute binding precedent in this Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

at *6 (quoting Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1282 (11th Cir. 2007) (citing Fed. R. Civ. P. 4(m))). "Good cause exists 'only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.'" Lepone-Dempsey, 476 F.3d at 1281 (quoting Prisco v. Frank, 929 F.2d 603, 604 (11th Cir. 1991) (per curiam) (discussing "good cause" under the former Rule 4(j)), superseded in part by rule as stated in Horenkamp v. Van Winkle and Co. Inc., 402 F.3d 1129, 1132 n.2 (11th Cir. 2015)). Without good cause, "'[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action or if the defendant is evading service or conceals a defect in attempted service.'" King, 2019 WL 691782 at *6 (quoting Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment).

However, the running of the statute of limitations "does not require that the district court extend time for service of process under Rule 4(m)," it is only a factor that the Court must consider before it "exercise[s] its discretion [in] either dismiss[ing] the case without prejudice or direct[ing] that service be effected within a specified time." Lepone-Dempsey, 476 F.3d at 1282. Aside from the running of the statute of limitations, other factors that are considered include "whether the defendant had actual notice of the claims asserted in the complaint," and "whether [the] defendant

would be prejudiced." In re Cutuli, 13 F.4th 1342, 1347 (11th Cir. 2021) (alteration in original).

## DISCUSSION

Defendant McCartney's amended motion to dismiss, dkt. no. 22, is granted because Plaintiff failed to serve her pursuant to Federal Rule of Civil Procedure 4(m) and has not shown good cause for that failure.[5] It is clear that despite Plaintiff's apparent awareness of the requirements of Rule 4(m),[6] Defendant McCartney was not served in accordance therewith. Rule 4(m) gave Plaintiff ninety days after filing her original complaint to serve Defendant McCartney. Fed. R. Civ. P. 4(m). After Plaintiff failed to meet that deadline, the Court gave Plaintiff not one, but two extensions of time to serve, each for an additional forty-five days. Considering the deadline imposed by Rule 4(m) and the Court's extensions together, Plaintiff had approximately 180 days to serve

---

[5] Defendant McCartney also argues Plaintiff's amended complaint should be dismissed as a shotgun pleading, but the Court does not reach that issue today because of its resolution of the jurisdictional issue regarding insufficient service of process.

[6] While the Court refers to the service issue in terms of "Plaintiff's" actions, the Court is "well-aware that service of process is typically handled by a party's attorney." King, 2019 WL 691782 at *7. Indeed, this is not the first time that Plaintiff's counsel has failed to follow Rule 4(m) in a case before this Court. Id. (noting the same and explaining, "far too often in his cases before this Court, Plaintiffs' counsel has failed to adequately issue service." (citing Orders, Alday v. Groover, No. 2:12-cv-108, ECF Nos. 19, 21 (S.D. Ga.); Order, Cupp v. United States, No. 5:12-cv-5, ECF No. 5 (S.D. Ga.); Order, Smith v. Roundtree, No. 2:15-cv-004, ECF No. 27 (S.D. Ga.)).

Defendant McCartney but still did not do so.  Instead, Plaintiff decided, for no reason that has been explained to the Court, to serve Defendant McCartney on March 4, 2022, approximately 318 days after Plaintiff filed her original complaint, and approximately 120 days beyond the last extended deadline to serve.  Dkt. No. 22 at 2-3.  Of further concern, according to the record, Plaintiff still has not served Defendant McCartney with the amended complaint, dkt. no. 15.[7]

Because Plaintiff failed to properly serve Defendant McCartney, the Court must determine whether dismissal of Defendant McCartney is appropriate.  It is.  In this regard, Plaintiff does not even attempt to argue there is good cause for a post hoc extension of time to serve.  Furthermore, Plaintiff's account of the attempts she made to serve Defendant McCartney and her allegation that Defendant McCartney "avoided service of process" do not show Defendant McCartney evaded service.  Dkt No. 26 at 1; see generally Dkt. No. 26.  All the Court can discern from Plaintiff's account of her attempts to serve Defendant McCartney is that Plaintiff may have attempted service at some point in the 318 days after the complaint was filed.  Nothing in Plaintiff's

---

[7] Federal Rule of Civil Procedure 5(a)(1)(B) requires service of any pleadings filed after the original complaint.  So aside from Plaintiff's failure to adhere to Rule 4(m) regarding the original complaint, dkt. no. 1, Plaintiff also failed to adhere to Rule 5(a)(1)(B) because she did not serve the amended complaint, dkt. no. 15, at any point after it was filed.

summary explains her failure to serve Defendant McCartney within the two court-granted extended service deadlines or in the approximately 120 days after the final extended service deadline expired (after which Defendant McCartney was finally served). And nothing explains why, having done so before, Plaintiff failed to request a third extension of time to serve Defendant McCartney. Instead, Plaintiff provides an ambiguous and imprecise account of four apparent attempts to serve Defendant McCartney, yet most of the details put forth by Plaintiff were considered by the Court as justification for the two extensions already granted.

Regarding her first service attempt, Plaintiff explains that she hired a private investigator "who provided an address in Milton, Florida as being the address for [Defendant McCartney]" and "stated that he had spoken with [Defendant McCartney], and she confirmed that address." Dkt. No. 26 at 1. The declaration of private investigator Tracy Buchanan states that this conversation took place in "September, 2021." Dkt. No. 26 at 6 ¶ 3. Plaintiff explains that she then provided that same address "to the Santa Rosa County Sheriff's office and sent the Summons, Complaint and paid the fee for service," requesting that Defendant McCartney be served there. Id. But "the Sheriff reported that the process was undeliverable because there was 'no such address.'" Dkt. No. 26 at 1-2. Plaintiff does not explain on what date the private investigator was hired, on what date Defendant McCartney's address

was supposedly furnished, or on what date Plaintiff sent the information and documents to the Santa Rosa County Sheriff's office.  Tellingly, the Non-Enforceable Return of Service from the Santa Rosa County Sheriff's office states that it was received on September 15, 2021 and returned to Plaintiff on September 16, 2021, both occurring after the Court's first extended deadline, September 10, 2021.  Dkt. No. 28 at 9.

What's more, Plaintiff already used this excuse to justify an earlier deadline failure.  In her second motion for extension of time to serve, filed on September 10, 2021—the expiration date of the first deadline extension—Plaintiff explained that she required the help of a private investigator, and had, on that day, secured an address to serve Defendant McCartney.  Dkt. No. 12. ¶ 1.  So the Court granted Plaintiff another forty-five-day extension. Dkt. No. 14.  Plaintiff's renewed account fails to show why she did not meet the ultimate November service deadline, fails to show why she did not ask for a third extension, and fails to shed any light on why Plaintiff did not serve Defendant McCartney for over 120 days after the final extended service deadline had expired.

Plaintiff's second alleged attempt at service also falls short of showing Defendant McCartney evaded service, particularly where, just like the first attempt, it did not occur until after the final extended service deadline.  Plaintiff alleges that for her second attempt she "engaged Accurate Serve . . . to perfect

service," dkt. no. 26 at 2, and explains that a "process server went to the address in Milton," but again, failed to serve Defendant McCartney because it appeared she did not reside there. Id.  Again, Plaintiff does not explain on what dates or time periods, approximate or otherwise, she hired Accurate Serve, what exactly "the address in Milton" is, or what date the alleged service attempt was made.  Moreover, the Verified Return of Non-Service provided by Accurate Serve states that the request to serve was received on November 16, 2021 and lists two different dates that service was attempted, November 18, 2021, and December 22, 2021, both dates being well after the final extended service deadline of November 5, 2021.  Dkt. No. 28 at 8.  Without more, Plaintiff's failure to even attempt service prior to the final extended deadline is only a further reflection of Plaintiff's own neglect, and is not, by any means, support for Defendant McCartney's alleged evasion of service.

Plaintiff then alleges, again without indicating any dates or time period, that she "continued to utilize the private investigator to attempt to locate the Defendant, and the investigator provided the address on Shane Way in Milton, Florida, as well as the address where the Defendant was served, as potential addresses." Dkt. No. 26 at 2.  As to her final attempt, Plaintiff explains, again without any dates, that she "engaged Lighthouse Investigative & Process Service to serve [Defendant McCartney]."

Id.  And that, finally, well after every extended deadline had passed, "the process server was able to serve [Defendant McCartney] at 3*** Fawnwood Drive, Milton, Florida on March 4, 2022."  Id.

So, all we know for certain is that despite having the full run of the ninety-day Rule 4(m) deadline and two additional forty-five-day extensions, Plaintiff did not serve Defendant McCartney within that time.  And instead of requesting a third extension of time—a failure for which Plaintiff provides no explanation—Plaintiff ultimately served Defendant McCartney on March 4, 2022, approximately 120 days beyond the third service deadline.  Dkt. No. 26 at 2.  Moreover, the key efforts in Plaintiff's account of the alleged service attempts were apparently done after the respective deadlines had passed, and, ultimately, without a third extension request.

Turning to the declaration of private investigator Tracy Buchanan, it, too, fails to show how Defendant McCartney evaded service.  Despite Plaintiff's insistence to the contrary, the declaration contains nothing more than conclusory allegations regarding Defendant McCartney's behavior.  Dkt. No. 26 at 6-7 ¶¶ 4, 5.  As Defendant McCartney correctly notes, Plaintiff has offered no facts to show how Defendant McCartney "'indicated' that she would take actions to avoid service, and what 'actions' she supposedly said she would take," dkt. no. 27 at 3, or what Buchanan's "experience" is that led him to reach the conclusion

13

that Defendant McCartney "appeared to be knowledgeable about the types of activities that would create locator information for someone doing skip tracing," the extent of Defendant McCartney's alleged knowledge of skip tracing, or how Defendant McCartney "appeared to be conducting her life in such a way that it would be difficult to locate her." Dkt. No. 26 at 6-7 ¶¶ 4, 5.  In short, Plaintiff's submissions are confusing at best, contradictory at times.

Furthermore, Plaintiff states that the initial, albeit failed, service attempt was made at an address which "had been furnished to the investigator in a phone conversation by a person who identified herself as [Defendant McCartney]." Dkt. No. 26 at 2.  But this statement directly contradicts the declaration of investigator Buchanan who says that Plaintiff "refused to give any address information and indicated that she would not cooperate in service of the process." Id. at 6-7 ¶¶ 4, 5.

Lastly, the sworn declaration of Plaintiff's own attorney, Douglas Adams, also fails to show that Defendant McCartney evaded service. Dkt. No. 28 at 12-13.  First, although not mentioned in Plaintiff's briefs, the declaration addresses a fourth service attempt made during the "time originally allowed for service," id. ¶ 2, despite the Court's already having addressed Plaintiff's failure to serve Defendant McCartney within the original ninety-day period in its first extension order. Dkt. No. 7.  Second, and

14

like the facts provided in Plaintiff's briefs, the declaration
does not provide dates, approximate or otherwise, of when this
fourth service attempt occurred.   Instead, it states that on
unknown dates, efforts were made to serve Defendant McCartney at
her former place of employment and her Brunswick residence.   Dkt.
No. 28 ¶ 2.   It goes on to state that "[n]o one was present at the
residence at the time some efforts were made, but ultimately a
male at the residence revealed that he had just purchased the home"
and that "he had no information as to [] Defendant Kimberly
McCartney's current address."   Id.   Then, and again, without any
explanation of when this occurred, it states "[a] review of the
deed records in Glynn County revealed that Kimberly Desporte had
signed the deed to her home in the presence of a notary [re]public
in Florida, although the deed was written to show that it was
executed in Glynn County."   Id.   The declaration concludes, in
like manner with the rest of Plaintiff's assertions in this case,
with no timeline or dates, by describing the attempts to locate
Defendant McCartney through a locator service and to serve her
through the Santa Rosa County Sheriff's Department.   Id. ¶ 3.

This, again, falls short of showing how Defendant McCartney
evaded service.   At most, Plaintiff seems to assume that because
Defendant McCartney changed her last name, her job, and her
residence, she evaded service.   That assumption, without more, is
insufficient to show that Defendant McCartney evaded service of

process.  That is especially so given the Court already addressed these exact concerns by granting two extensions of time to serve, and Plaintiff still failed to do so.  See Dkt. No. 7; Dkt. No. 14.

So, Plaintiff may have made four attempts to serve Defendant McCartney, the first of which she has not shown occurred within the original ninety-day deadline, and the last of which—without explanation—occurred months beyond the final extended deadline for service.  Plaintiff has not provided any facts sufficient to allow the Court to conclude that Defendant McCartney tried to evade service, either before the final extended deadline or beyond.  When considering the entire record, the better conclusion is that Plaintiff evaded timely service of Defendant, not that Defendant evaded being served.

Considering the other factors that might justify granting a retroactive discretionary third extension even in the absence of a showing of good cause, another extension of time for service is not warranted in this case.

In her amended complaint, Plaintiff alleges that this case arises out of events that took place on April 20, 2019.  Dkt. No. 15.  Thus, if the claims against Defendant McCartney were dismissed, there is a risk that both Plaintiff's claims under 42 U.S.C. § 1983 and Georgia law could be barred by the applicable

statutes of limitations.[8]   However, "the statute of limitations does not require that a district court extend the time for service of process" under Rule 4(m), and the circumstances of this case do not warrant this discretionary extension.  <u>Horenkamp</u>, 402 F.3d at 1133.

Plaintiff's original complaint was filed on April 19, 2021, the day before the statute of limitations would seemingly expire on both her § 1983 claims and her Georgia law claims.  Dkt. No. 1. After waiting until the eleventh hour and fifty-ninth minute to file her complaint, Plaintiff successfully served Defendant City of Brunswick within the requisite ninety-day period.  Dkt. No. 5. Plaintiff did not, however, manage to serve Defendant McCartney within the parameters of Rule 4(m), apparently for various reasons, including Defendant McCartney's move out of the District, change of name, and change of employer.  Dkt. Nos. 6, 12.

It is important to note that there is no indication that Defendant McCartney was on "notice" of the claims against her prior to the untimely service of the complaint.  <u>In re Cutuli</u>, 13 F.4th at 1347.  Nor can the Court conclude that the Defendant would be

---

[8] The statute of limitations for Plaintiff's claims likely expired in April 2021. O.C.G.A. § 9-3-33; <u>see also</u> <u>Reynolds v. Murray</u>, 170 F. App'x 49, 50 (11th Cir. 2006) (per curiam) (explaining that 42 U.S.C. § 1983 "has no statute of limitations of its own and instead is governed in each case by the forum state's general personal injury statute of limitations" (citing <u>Owens v. Ocure</u>, 488 U.S. 235, 236 (1989))).  However, the Court finds it unnecessary to reach the issue of timeliness.

free from prejudice if the post hoc third extension were granted. Certainly, prejudice would befall the Defendant if forced to defend a case of which she should have been informed nearly a year earlier. Witnesses move, memories fade, evidence scatters—unless you are put on reasonable notice that proof is needed. There are cases allowing an extension where, for example, a Plaintiff was served four weeks late. Horenkamp, 402 F.3d at 1130, 1133. Here we have not four weeks, but four months.

Having considered the factors that would allow the Court to extend the deadline for service in the absence of good cause, such a long discretionary extension is not warranted here.[9]

CONCLUSION

For these reasons, Defendant McCartney's original motion to dismiss, dkt. no. 18, is **DENIED as moot,** and her amended motion to dismiss, dkt. no. 22, is **GRANTED.** Plaintiff's claims against Defendant McCartney are hereby **DISMISSED without prejudice.** There being no claims remaining in this action, the Clerk is **DIRECTED** to close this case.

---

[9] Of course, the months of delay continue to add up for service of the amended complaint, dkt. no. 15, which has, according to the record, never been served.

**SO ORDERED** this 3rd day of November, 2022.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA